We'll call the next case of Aluminum Bahrain v. Alcoa, et al. Mr. Shah. May it please the Court, Pratik Shah for Appellant Aluminum Bahrain, known as Alba. With your permission, I'd like to reserve three minutes for rebuttal time. The District Court's judgment ordering dismissal in favor of Defendant Victor Dottolay's demand for arbitration should be reversed on either of two independent grounds. Defendant, a non-signatory, lacked the right to compel arbitration at all, and two, he waived any such right. I'd like to start by addressing waiver. And let me ask you something about that choice of how you approach this. In your opening brief, you began with what you began with just now, and started with the substantive issue of rights of non-signatories. And it wasn't until you got to page 41 of your opening brief that you turned to the question of waiver. In your reply brief, you flipped that around, and evidently an oral argument you're going to flip that around to. And I guess my question to you is, what do you think is your stronger position? Is it the waiver or is it on the merits? And I'll follow up on that with a leading question. Isn't your stronger argument one of waiver, such that if we were to find in your favor or rule in your favor on that, we don't have to reach the other issue? Absolutely, Your Honor. I do think the reason I think that waiver is a stronger argument is because the circuit precedent in this circuit is, I think, cleaner and clearer on that question. And so that's why I'm leading with that issue. And you're right, Judge Smith, that if you reach the waiver question, you don't have to deal with, I think, what is the more complicated and murkier question on the right to compel arbitration in the first place. And this court did that, for example, in its latest published decision on arbitration in Ray PBM, which it was faced with the same two issues. Is it arbitrable? And then did they waive the right to arbitration? This court said, we're just going to decide this case on waiver and not reach the question. It did the same thing in the Hawksworth case. It's sort of a common strategy in these cases. So obviously, Your Honor should decide which issue you want to address. And either would be an independent ground. I'd say we just gave you a pretty clear opening. OK, so I will start with waiver. And it is undisputed that defendant waited six years in this case, including 11 months of active litigation, followed by an 18-month stay at his behest, before even mentioning arbitration. Now, defendant has still yet to offer any reason for that belated invocation. Am I correct that there was, in fact, no mention to you of arbitration by defendants until one week before there was actual formal invocation of it? Correct, Your Honor. There was no invocation, no mention of arbitration in this case until after six years in the case, after 11 months of active litigation, motions to dismiss, interlocutory appeals, additional 18 months of stay. Finally, we get there. Factually, how does the period of active litigation in this case compare with the period of active litigation in PBM? Ten months in PBM, 11 months here. And here, I'm only counting as active litigation the time of the motions to dismiss and the interlocutory appeal. In addition to that, and there's no question about the active participation by defendant Victor Dadale in that period. In a way, defendants make much of the fact, the procedural fact, procedural issue, that they haven't or that they didn't file an answer. What do you make of that? Your Honor, a couple – What's the significance? Sure. A couple responses to that. First, we don't think it's significant under this Court's case law. This Court has never pointed to the filing of an answer as a dispositive event or even a significant event. There's no language and they can't cite any language at this Court providing significant weight to the filing of an answer. Well, it is significant, but you're correct. There's nothing in our case law that points to it as some pivotal point. For waiver purposes. That's right. How about the lack of discovery, though? Accepting that putting no cases ever held at waiver in a case without an answer in boldface and italics is, you know, setting that aside as something that may be less than persuasive. They also make the argument that there's no discovery taking place in this case. And in fact, in PBM, the Court went out of its weight of note that discovery is usually the factor that's weighed most heavily. And that ought to be significant to you people on this panel. Your Honor, there's no question that usually discovery is a significant factor in the analysis. But in In Re PBM, if you actually look at the holding, what it said is the District Court put undue emphasis on the discovery factor. And there was zero discovery in In Re PBM. What the Court said, what this Court said in In Re PBM, its latest published decision on this issue, it said, yes, discovery is a significant factor. But it does not necessarily outweigh when you have this extent of delay and litigation. It doesn't necessarily outweigh, but PBM acknowledges that it's generally given the most weight, doesn't it? Generally it is, but you look at all the circumstances. And if you look at the two... Well, and PBM also says, or reiterates, that no one factor is determinative. No one factor is determinative. And PBM goes out of its way on the discovery point. It gives special emphasis on that point. It says, look, when you look at the other factors here, predominantly pointing to the delay and the litigation of the motions to dismiss, those are so far on the other end of the waiver spectrum that that trumps the waiver. And the waiver spectrum here that you've talked about, Mr. Shaw, and the reason discovery is given particularly heavy weight is because the analysis in waiver is focused on prejudice, right? Yes. Prejudice to the person who's claiming there was a waiver, correct? Yes, Your Honor. So your opponents go out of their way to say that ALBA is throwing around numbers like a million dollars in fees, but they're talking about stuff that has nothing to do with me, Mr. Dadla, that's fighting against other people. They're not telling you what they were really prejudiced in terms of anything I did, including money or how they're hurt. Okay. So why don't you go ahead and respond to that? Your Honor, okay, let me set forth three different buckets of prejudice, if you will. Well, first of all, what kind of prejudice are we talking about? Because I thought we effectively had in our case law two buckets, and one is substantive prejudice. That's right. For two categories, and the other would be the prejudice resulting from unnecessary cost and delay. Exactly. And the latter would seem to be minimized here by virtue of the fact that there was no discovery. Am I right? Well, Your Honor, it certainly is one part of that calculus, but you have both components of prejudice here. Let me talk about the time and delay sort of prejudice first. Not only did the delay in this case, the belated invocation, keeping arbitration in the back pocket until six years later, delay Alba's recovery from this particular defendant. We still have to go to arbitration if this court were to uphold the decision. It increased the risk of asset dissipation during that time. It compromised the ability to prove this case. The evidence and the witness continues to grow stale. We haven't had an arbitration seven years since the filing of this suit. Okay. Hold on just a second, though. How is that any more prejudicial than if we rule in your favor, and you go back, and there's some sort of trial in there? What's the meaningful difference in prejudice to you, whether you present your case in an arbitration panel, or you present your case in a court of law? You're still going to have to go either way and have facts decided and a decision rendered, right? Your Honor, that is true, but let me talk about how the belated invocation actually materially altered the course of litigation here and the tangible expense that it caused Alba. Now, if defendant had timely raised arbitration, and when we say timely, we don't just mean the minute that Alba filed the suit, but even if we were to excuse the first three and a half years of delay during the DOJ stay, if we go to the point where they filed their motion to dismiss, if they would have mentioned arbitration in that motion to dismiss, concurrently in that motion to dismiss, along with all of their other grounds, both merits and personal jurisdiction, then Alba, it would have materially altered the course of this litigation. Alba would have had the choice three and a half years ago to, A, either go to arbitration directly at that point, avoid all of the expense and delay it incurred in responding just to Mr. Dottolay's portion of the request, both merits and personal jurisdiction and stays and the like, or it could have at least asked the district court, let's resolve the arbitrability question first and then decide, litigate all these other issues before that and made the decision as to do that. So it would have, and that's something that this court has said in its case law. It's emphasized it. So is that substantive prejudice? Your Honor, the court has put it, it doesn't label it. In some cases they call it a strategic sort of prejudice in PBM. They say withholding that sort of information alters the strategic planning of the other party. Well, PBM, PBM emphasized, in fact, did so at the end of the opinion. A metaphoric reference that I believe was from Grayhold Co. Taking a swim? The delaying party, yes, should not be allowed to delay its demand for arbitration and use federal court proceedings to test the water before taking a swim. How did Dottolay test the waters before taking a swim? Sure, Your Honor. That's what I put in that second bucket that I was talking about, the substantive unfairness point, the taking a swim. The other courts have called it, this court and other decisions have called it taking two bites at the apple. We think here Mr. Dottolay was able to take two bites at the apple by keeping arbitration in his back pocket until the end of the suit or at least until this point in the suit. And here's how the two bites or taking a swim plays out here is if Mr. Dottolay had prevailed on his motion to dismiss, let's say he prevailed on the merits on his 12B6 motion three and a half years ago, that would have been the end of this case. There would have been no hint of arbitration. He would have never invoked it. Alba's position was they can't arbitrate against him. And that would have been the end of the case. Instead, he had the benefit of taking that trial balloon, filing 12B6 motions on multiple grounds. Once that denied, now he has the opportunity to win again in arbitration. Let me ask you about one other possibility. Didn't he also have the opportunity to rely upon and or seek a stay in the Article III court system, which if he had been unsuccessful at obtaining might have then been able to opt for arbitration and seek a stay from the arbitrator? Would that have been a possibility? Absolutely, Your Honor. He could have done that very same thing and saved the delay here. I guess the other – Since we're down to about 30 seconds, I do want to shift gears from waiver onto substance of arbitrability here. First, you make the assertion that this really can't be a circumstance where Mr. Dottolay can claim arbitration rights because then it would be, as I think you put it, a one-way street. That there's a – he's got no obligations at all under the contract, and that would be fundamentally unfair. And I guess the question I've got that I'm interested in your response on is, won't that always be the case when there's an agent, a non-signatory, trying to take advantage of an arbitration agreement? By definition, they're not in the contract, they're not bound by the contract, and yet it's often been found that they can take advantage of the arbitration clause. I don't think that's right, Your Honor, because them not being named, the agent not being named in signatory as a signatory or not being named in the contract doesn't mean that they don't have obligations in the contract. So, for example, if you looked at this court's decision in Pritzker, the primary decision that they rely on in agency, that involved Merrill Lynch, and it was a pension plan investment contract. Pension plan on one side, Merrill Lynch on the other. The agent was the broker. Now, the broker had to comply with the investment obligations and advice set up within the contract. He was simply implementing the contract. But, Your Honor, when you say he had to comply with that, he had to comply with that not because of the contract. He had to comply with that based on his obligations to his employer, right? It was not a party to the contract. I'm trying to get to the, I mean, he may have had obligations that redounded to the benefit of the people who were on the other side of the arbitration clause, but the obligations that the broker had flowed not from the arbitration contract, but from the employment contract with Merrill Lynch, right? Your Honor, I think the fundamental difference between the situation in Pritzker, regardless of the source of the obligations, is the agent in Pritzker, and the agent, when any of the courts of appeals, the other courts of appeals, talk about this agency exception, they're talking about is this the type of agent that was contemplated to perform the obligations of the contract. In Pritzker, what this court said, of course, this contract could only be implemented, performed by agents, right? Like the investment broker. The fundamental difference here is if you look at our complaint, look at our RICO statement, it is very clear, very clearly pled that Mr. Daudelet played no legitimate role in the performance of the contractual obligations, and his sole purpose of being inserted in this relationship was to perpetrate the fraud. So it wouldn't be fair to say that the parties, that Alba contemplated that an actor like him would be implementing the obligations. That, I think, is the critical difference. Arbitrability, I'm sorry, Your Honor. No, it's fine. Pritzker's been seriously criticized. Does it remain good law in the wake of Arthur Anderson? Your Honor, I think it does remain good law, but you cannot read it so broadly as the other side would read it such that it swallows. Anytime you have the label of agent, they automatically get to arbitrate. The way to reconcile Pritzker with the law of other circuits and with traditional principles of arbitration and agency is to simply read Pritzker, yes, of course agents are covered and can invoke arbitration when it's reasonably foreseeable that they will be involved in performing the obligations of the contract, not when it's solely an agent of fraud who is alleged to have no legitimate purpose in performing the contract. The reason why that is so significant is because arbitration is about consent, and the parties would not have consented to arbitrating with someone who had no legitimate role in performing the contract. All right. Thank you, Mr. Shaw. Judge Van Antwerpen, do you have questions of Mr. Shaw? I do not, sir. All right. Thank you. Thank you, Mr. Shaw. We'll have you back on rebuttal. Thank you, Your Honor. Mr. Kendall. May it please the Court, I'm David Kendall, appearing for Pele, Victor Doddleigh. I'd like to begin by making two points about waiver. First of all, waiver, the touchstone of waiver, as this Court has again and again said, is prejudice. There's no single fact. If you look to the various cases, there are a lot of different factors. The Hawksworth case named six. But prejudice is really the touchstone. The second point is that the cases again and again say that waiver is not to be found lightly. It's not to be inferred. There has to be a serious prejudice here to cause waiver. Mr. Kendall, PBM found waiver. Shouldn't it matter for purposes of our prejudice analysis in this case that the total length of the pre-arbitration proceedings was more than six times longer than what was in PBM? Judge Mintz, when you look at the actual reality of that period, the answer is no. In fact, the litigation period, as my friend Mr. Shaw pointed out, is about the same. Delay does not equal prejudice. Here, the delay was a strategy of Alba's. It acquiesced in a very lengthy stay of the case before Mr. Doddleigh was even served. You don't have to be... That's a remarkable statement, Mr. Kendall, that this was Alba's strategy to delay this. Even if we take the four years of the DOJ's initiated stay out of the mix here, we've got... It's not Alba that's repeatedly going to the district court and saying, hey, we want an extension of the time to answer. Give us another extension of the time to answer. Hey, put it off some more and stay discovery while you're at it. I mean, I could go through and read to you the list that they've put in their briefing in which you don't contest of the times you approached the district court, your client, and asked for delay, but I'm at a loss to hear you say this was all a master plan by Alba. The delay in this case, other than the DOJ delay, was your client's delay completely, was it not? No, Your Honor. The case was administratively stayed until the Justice Department asked for the stay to be lifted in June of 2012. I think many of those motions are from Alcoa. They're not from Mr. Dottole. To get back to Judge Smith's aquatic metaphor of testing the waters, one of the things that courts often find waiver on is where a party tries out something in court, finds it's unsuccessful, and then seeks arbitration. You filed a motion to dismiss. Well, we did not seek to open the case. That was Alcoa, and interestingly enough, Alba didn't. That was Alcoa, but you filed your own motion. There were three motions to dismiss. You took a ride on the back of the other two and filed your own motion to dismiss, which contained in it, and, you know, we've got it in Appendix Volume 2, a pretty lengthy brief, starting at page, what is it, 455 of the appendix, something like that, where you go through a significant number of merits-based arguments. Your Honor, the primary motion we made was the 12b-2 personal jurisdiction motion, which we would have waived had we not presented it then. When Alcoa succeeded in opening the case to file a limited motion as to whether the complaint was sustainable, Mr. Daudet joined that. He didn't initiate it. He did join it. Mr. Kendall, you say your primary argument was jurisdictional. It's true that you had five or six pages of jurisdictional argument, but I'm looking at your brief. Pages 13 through 28 of your brief are merits arguments. They're not jurisdictional arguments. They're a variety of merits-based arguments which were pressed on the district court. How is that not a merits attack? Your Honor, Mr. Daudet was taking the position, which I think is consistent, that the case did not belong in the district court. That's, I think, different from other kinds of merits-based arguments. For example, in the Gray-Holco case, there was an attempt to get a preliminary injunction. When that failed, the party had the bright idea to try to get arbitration. Of course, that was rejected. In the e-letter case, the parties litigated for four years before a motion to compel arbitration was made. That's not the case here. Hold on just a minute. You're trying to make it sound like it was really just a forum issue. Your merits arguments were case dispositive, not send us to arbitration arguments. The RICO enterprise hasn't been properly pled. You haven't talked correctly about the application of the RICO statute to foreign activities. These are not forum-based. It doesn't belong in the district court. It doesn't belong anywhere. There's no claim arguments. Those are your arguments. Now, I'm not making it up. I'm looking at when I say you. I repeat. I'm talking about, I hope you understand, the Royal U, the client. I like the Royal U. It's a seldom-used guy. I'm just puzzled by your effort to minimize this. I'm not sure in your briefing in here why you guys just don't own up to it and say, sure, we made a merits attack, but that shouldn't be dispositive. I thought I did that. If I didn't, I'd do it now. When ALCOA got permission to open the case, it made a motion primarily under the recently decided Supreme Court case in Morrison, which held that RICO did not have extraterritorial jurisdiction. That motion obviously affected Mr. Dadele. He joined it. To that extent, it was a merits-based, but he joined his other motion because he had to use it or lose it. Let me get back to strategy. When these motions were being argued, the delay here, when I say it was strategic, you don't have to be Oliver Wendell Holmes or Benjamin Cardozo or Louis Brandeis to know that if you can get a conviction by your defendant in a RICO case, much of your case is going to be made. If you look at the transcript of the oral argument at Appendix 713, 714, Alba's counsel quotes from and emphasizes the importance of the British serious fraud offices investigation and charging of Mr. Dadele back in October 2011. So my point here is that... Are you trying to say that they're the ones who are behind the Department of Justice coming in and moving for a stay? We can't tell that from the record, Your Honor, but it would not surprise me given what we know outside the record. Well, from the record, we don't know that. From the record, we know that the U.S. Department of Justice intervened and sought a stay and received it. And Alba did not move to lift that stay for four and a half years until the government did. We do know that from the record. Right. So let's set aside, because I appreciate your effort to make a vice into a virtue. Four and a half years of extra delay doesn't really go much in your favor. I mean, trying to set it on their shoulders might make some strategic sense for you, but let's agree for purposes of discussion to just put that to the side and talk to us about why you think it's so significant that no answer was filed. Because an answer joins issue. An answer is a pleading, which basically says, I belong in court. Again, I don't want to... It's part of other conduct. Moving for preliminary injunction, I would argue, is the same kind of activity as an answer. An answer really... How about a merits-based motion to dismiss? Does that not join issue? If you say, I don't have to file an answer because I've got these case-dispositive arguments and you come to court with those first. Are you not seeking to join issue on the merits in that way? You are in some way, but many cases have held that 12b-6 does not waive a motion to arbitrate. The difference is whether you're saying, this is the forum I belong in. And I think when you look at the various cases... Why didn't you move for arbitration as an alternative in the first motion to dismiss? As many cases have, the ones you refer to, when you say a 12b-6 doesn't waive. The cases seem to be 12b-6 cases where somebody's moved for arbitration. At the time, they've moved for dismissal under 12b-6. It would be possible to have done that, but Mr. Dadaly knew that he didn't waive the motion to compel arbitration by not making it then. It also, I think, looks odd when you're saying to the court, you have no jurisdiction to ask the court then to do something. Well, when you say it looks odd, you'd agree, wouldn't you, that the cases, and they're pointed to in the briefing where those motions are joined, are motions where it's worked to the favor of the party seeking arbitration. Because they didn't delay. They came in at the same time and made their pitch on arbitration. I think that's essentially what Mr. Dadaly did here. The only delay really attributable to him are the two stays necessary to protect his right to the criminal proceeding in Britain. And those two stays, the judge specifically found, did not prejudice all of them. My point is you cannot equate delay here with prejudice because there was a substantive reason for ALBA wanting the criminal case in Britain to go forward. They made a bet. We're talking past each other. Let's take the four years out. Take that out. Put it to the side. Assume we agreed with you that that's not to be counted against your client at all. Looking at the months, nearly a year, that your client actively litigated and the 18 months of extensions and delays that were granted, why doesn't all that count against your client? And particularly in light of the cases where 11 months, 10 months, a year, have been shown or decided to be sufficiently lengthy to warrant a judgment of waiver? Your Honor, I don't want to get it back into a loop, but the question is did the delay prejudice ALBA? And it cites risks. It cites an affidavit. It's spent a million on the case, but that million, it's clear, went to a lot of other places. The question does become one of prejudice, however you weigh the factors. And I think, as I said earlier, if counsel does something that really is testing the waters, then courts are likely to say you weren't really serious about arbitration. Here, ALBA didn't get the verdict it wanted, but that doesn't count as prejudice. My point is that... What doesn't count as prejudice? Sorry. The delay doesn't count as prejudice just because ALBA didn't get the verdict it wanted. It made a bet. It hoped that a guilty verdict in the U.K. criminal proceeding could be used in its civil RICO action as virtually an admission of guilt to the civil liability of the RICO case. With my colleague's permission, I want to shift over. We've got about three minutes to talk about the substantive arguments for arbitration. Now, the arbitration clauses here, you rely very heavily on Pritzker. The arbitration clauses in Pritzker were framed in terms of, if I'm not mistaken, quote, all controversies which may arise between us, close quote, whereas the arbitration clauses here both speak in terms of disputes, controversies, or claims arising under or in connection with this agreement. Are those not materially different in their breadth? Not at all, Your Honor. I think they are a different way of saying anything that arises under or is in connection with this agreement is covered. Pritzker doesn't reference the agreement. Pritzker says, you're in a relationship with us now, and any controversy we have is going to be decided by arbitration. All controversies which may arise between us, no reference, no limitation to an agreement at all. In this case, there's reference and limitation, right? I don't think so, Your Honor. The agreement, the entire transaction between the parties was described in this agreement. Again and again, you have references. Well, not quite when you say the entire agreement between these parties. Of course, Alba's position is we never had any agreement with Mr. Dadel. We didn't know of his existence. We had no idea this guy was out there inserting himself in a criminal way in our business. So their position seems to me to be the scope of this arbitration agreement is such that it doesn't take account of shadowy figures like Mr. Dadel. Even if you give a broad reading to arising under this agreement, he's not part of it. What's the response to that? Well, the response to that is he's very clearly an agent both of Alcoa Australia and of Triple AC. They say that again and again. He's not a shadowy agent. He's not the right kind of agent in their view. That doesn't matter. The broker in the Pritzker case, Belinda Stewart, was in fact accused of committing all kinds of fraud. But they knew she was around and nobody suspected that there was anything other than an agent doing the business. Here their allegations are very, very precise in saying, you know, you can say they knew he was around, but their allegations, which we have to take as true at this juncture, are we didn't know who he was or what he was doing. He was hidden from us at all times on purpose. Doesn't that make a material difference from Pritzker? It really doesn't because that's not what their papers say. It's not what the First Amendment complaint says. It's not what their RICO statement says. If I can, again, read just a snippet from the oral argument by Albus Counsel, they have a document that they're referring to. That document is at Appendix 883. And here's what Albus Counsel says at 7 of 6. This is a remarkable document, Your Honor. In 2004, Mr. Rice, an officer of Alcoa, embraces Mr. Dahle's company and says, this is our beloved agent. Listen to him. He is us. We are him. That ties this case together, Your Honor, in a way that no other piece of evidence does. I don't think they've ever denied that he's an agent. I think the assertion they're making is he's not the kind of agent that has ever been considered to be one who could take advantage of an arbitration agreement, as to which arbitration agreements would reach out. But set that aside for a minute. I want you to respond to the one-way street argument and the assertion that they've made that it would be fundamentally unfair to give this person an opportunity to invoke the benefits of arbitration when his actions, his behaviors, indeed his criminal acts, were fundamentally at odds with the contract,  So it can't be the case that he gets the advantage of the arbitration when he's got no good thing to contribute. Three quick points, Your Honor. First, that is a merits question. Very often, agents do things that one party didn't expect. Second, I think Pritzker completely applies here. Third, and again, the agent in Pritzker... How does Pritzker apply? Pritzker applies because the Merrill Lynch entity is going to be on the hook for the activities of its agents, MLAM and Belinda Stewart. The third thing, though, I think, which Your Honor is perhaps suggesting, is a lack of mutuality. First of all, the cases hold that to be enforceable, an arbitration agreement doesn't have to be mutual. But second, I think if you were to turn the map, as they say in the Army, and if either Alcoa or Alba had wanted to hold Mr. Daudelet to arbitration under these pleadings, I think they both could have done so. Okay. Judge Van Antwerpen, do you have any questions of Mr. Riddle? I do not, sir. Thank you. We'll rest on our briefs. Thanks. Thank you. Mr. Shaw, rebuttal. Thank you, Your Honor. I'd just like to make four brief points on the waiver issue. First, we still haven't heard any justifiable explanation for why Mr. Daudelet sat on his right to invoke arbitration, his purported right to invoke arbitration, until this late juncture in the litigation. Counsel says it may have been odd for him to do it. It happens all the time concurrently with motions to dismiss. And the other reason he says it would have been odd is because you can't litigate that sort of question before the personal jurisdiction and merits. The Supreme Court's decision in Sinochem says you don't have to reach even subject matter jurisdiction, let alone personal jurisdiction, if the claim is a foreign forum is better suited to litigate it. So those justifications just don't hold up. Instead, if this court were to ratify the decision below, that would create all sorts of strategic advantages for parties to wait until a later time to invoke arbitration. Once you respond, if you would, to the argument that Mr. Kendall made, that you haven't described your prejudice, that you're not in any worse situation now, and you haven't described how you're in a worse situation. Your Honor, let me give you a few concrete forms of prejudice. If that invocation of arbitration had been made in a timely fashion, concurrently with the motion to dismiss, ALBA could have revamped the way it litigated this case in significant ways. One is it could have asked the district court, okay, let's resolve this arbitration question first. Before we spend significant sums of money litigating about personal jurisdiction and merits with respect to Defendant Daudelet, whether that price tag of litigation is a million dollars or $100,000, this court can readily infer that there was significant expense paid in briefing and the motions to dismiss on personal jurisdiction and merits and the following interlocutory appeal that they took. All of that could have been avoided had ALBA known that arbitration was going to be an issue and asked the district court to decide that first and save the four years of delay or three and a half years that have transpired since that point. That's one concrete form. Second concrete form of prejudice is after the other defendants had settled out and the motions to dismiss were denied and the other defendants settled out, the court ordered a mediation. There was a full day mediation in London, the forum of Mr. Daudelet's choice. Mr. Daudelet was the only defendant at that mediation. Obviously, ALBA would not have spent the resources to conduct that mediation had it known that there was an arbitration sitting in the back pocket or at least it would have fundamentally altered how they approached that mediation. Third concrete form of prejudice, after the motions to dismiss and they concede on page 43 of their brief, Daudelet is solely responsible for the additional 18 months of stays that happened pending the UK prosecution. During that time, Mr. Daudelet represented to the district court and the district court found which Mr. Daudelet embraced that it would in fact not impede discovery once discovery began after the UK prosecution was over. In fact, it would comport with the discovery schedule that had already been set up. During those 18 months, ALBA was engaging in significant discovery planning and this isn't just some legal mumbo-jumbo. There was significant cross-border discovery that would have been had to taken from foreign entities, the Daudelet-owned shell entities, Alcoa of Australia. There's a lot of research that was put into that and then there was a defensive discovery planning that ALBA was doing in terms of massive electronic databases being prepared for that sort of discovery. They did not know that this would be headed to arbitration potentially in which case discovery is obviously very different. It's by agreement of the parties, not by the foreign rules, federal rules, not by treaty. That's at least three concrete forms of expense prejudice. I can go on, but my time has elapsed. If there are no further questions. Thank you, Mr. Shulman. Thank you, Your Honor. We thank counsel for a very well-argued case, very interesting case. We'll take the matter under advisement.